68 Cal.Rptr. 804]

[Civ. No. 32120.    Second Dist., Div. One.    Mar. 14, 1968.]

DOROTHY L. CLEMMENS, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD and HONEY-WELL CORPORATION, Respondents.

(1)

2

John T. Revis for Petitioner.

Everett A. Corten, Edward A. Sarkisian, Nathan Mudge, Parker & Dally and John E. Mouser for Respondents.

McCOY, J. pro tem.*—The widow of a deceased employee seeks review and annulment of a "take nothing" order of the appeals board on her claim for death benefits.

The decedent had been employed by the Honeywell Corporation for 11 years as an electrical engineer. His duties took him to various plants and factories in which the employer had installed electrical instrumentation equipment. On January 19, 1965, he went to the premises of Arnold Engineering Company to inspect an electrical control device that operated a high temperature furnace. At about 8:25 a.m. he was last seen alive by an employee of Arnold. About 10 to 15 minutes later he was found lying near the electrical instrument console he had come to inspect. The access doors to the instrument console were open and his test equipment was connected to the console.

The electrical current used to operate the instrument was low voltage and low amperage except at terminal points where the voltage was in a 115 to 220 range. These terminals were covered with a plate. There was no evidence showing whether the covers were in place or not. There was evidence that it was possible to come in contact with the terminals with the covers on since there was a space behind them, but that it would be improbable.

An autopsy revealed the decedent's heart was in good condition and that his body reflected no electrical burns or "contact impressions." The coroner's report states that the cause of death was diabetes mellitus and that "The death is classified as a Natural death."

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

There was a great diversity of opinions as to the probable cause of death given by various doctors. The autopsy surgeon, Dr. Robert G. Richards, concluded that death was due to diabetes and the death certificate so stated. Dr. Raymond Brandt, the coroner, agreed with Dr. Richards. In his report, Dr. Richard O. Myers stated that he was of the opinion death was not caused by diabetes, but that it was caused by electrocution.[1] Dr. Edgar Mauer testified that he did not believe that diabetes mellitus was the cause of death, and that the most probable cause of death was some form of heart disease which was not explained by the autopsy, adding that there is no evidence in the autopsy that decedent died of electrocution. Dr. Bernard Bronstein, who saw the deceased at the scene, believed that he died from either a heart infarct or from electrocution. All of the medical witnesses agreed there could be electrocution without burn marks and that electrocution leaves no pathological trace.

The referee found that decedent's death "did not arise out of and occur in the course of his employment" and ordered that applicant take nothing. In her opinion on the findings the referee stated that it appears that decedent "died from a cause or causes which have not been determined."[2] The board denied reconsideration, basing its order "on our review of the record, and for the reasons stated by the Referee, whose report we adopt and incorporate."

The petitioner contends that the standard of proof to which the board adheres is unreasonable. In effect, she argues that prima facie proof is made where an employee is found dead in

---

[1]Dr. Myers' report reads in part: "Considering the reports and information available, I believe that electrocution is medically and objectively the probable and most reasonable cause of this sudden death. . .
In summary, I am unable to substantiate a 'natural cause of death' in this instance and believe that there is ample evidence to support the opinion that this was in fact a fatal electrocution which has previously been incorrectly classified as death due to diabetes mellitus."

[2]The referee further stated in her opinion: "The only substantial evidence of electrocution, other than proximity to an electric device, was the testimony of Fred H. Cady whose report was received as Applicant's Exhibit '3'. It was Mr. Cady's opinion that electrocution were [sic] possible under very exceptional circumstances. This would require that the deceased grasp the electric console in a specific manner which would be likely only under conditions where the deceased were faint and dizzy. However, all witnesses agree that there were no visible signs of entry and exit of electric shock. It then becomes difficult to establish death by electric shock where the possibility of fatal contact is possible only under most restricted conditions and where there is no physical evidence of electric shock. If the contact were apparent, then the absence of physical evidence would be less significant."

the course of his employment, his employment entails risk of harm, and the *objective* evidence reveals little or nothing from which the cause of death may be determined, the applicant has established that death occurred in the course of and arose out of the employment. She argues that all reasonable doubts are to be resolved in favor of compensation.

In 1 Larson, Workmen's Compensation Law, the author states (pp. 108-111): "When an employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, in the absence of any evidence of what caused the death, most courts will indulge a presumption or inference that the death arose out of the employment. The theoretical justification is similar to that for unexplained falls and other neutral harms: The occurrence of the death within the course of employment at least indicates that the employment brought deceased within range of the harm, and the cause of harm, being unknown, is neutral and not personal. The practical justification lies in the realization that, when the death itself has removed the only possible witness who could prove causal connection, fairness to the dependents suggest[s] some softening of the rule requiring claimant to provide affirmative proof of each requisite element of compensability." He cites four California cases for this proposition. (*Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407 [156 P. 491, Ann.Cas. 1917E 390] [night watchman found dead from gunshot wound]; *Western Grain etc. Co.* v. *Pillsbury,* 173 Cal. 135 [139 P. 423] [night watchman missing and evidence of violence at the scene]; *Bissinger & Co.* v. *Industrial Acc. Com.,* 105 Cal.App. 441 [287 P. 540]; [employee found dead enveloped in carbon monoxide gas and evidence he was repairing employer's car]; *F. W. Woolworth Co.* v. *Industrial Acc. Com.,* 17 Cal.2d 634 [111 P.2d 313] [employee found seriously injured at bottom of light well and with no memory].)

Larson further states (pp. 112-113): "In many so-called unexplained-death cases, however, there are some employment or personal ingredients on which an inference one way or the other could be based. Thus, awards have been made for unwitnessed accidents in which employees have been found run over by trains or trucks, burned by gasoline, asphyxiated by gas, buried by cave-ins, and blown up by dynamite. In such cases, although no one may have seen the accident so as to be able to say why the dynamite exploded or the gasoline ignited, the character of the harm is so obviously work-related that it

becomes practically impossible even to suggest a hypothetical personal explanation. Similarly, when employees have died as the result of unwitnessed falls down elevator shafts, from buildings, from boats, or from trains, a noncompensable origin is virtually inconceivable.''

The California cases which appear to indulge a presumption or inference seem to be cases where the character of the harm is obviously work related. ▮ The problem in the present case is that the character of the harm is neither obviously work related nor obviously idiopathic, that is, personal, as it is in a case where the autopsy clearly shows that death resulted from disease. ▮ In a case where the employment appears to be the cause, the burden is placed on the employer to prove otherwise. In a case where disease appears to be the cause, the burden is placed on the applicant to prove the employment contributed. ▮ In the present case, where no inference arose either way and it appears, as argued by the board, that the finding was a determination that the applicant has not sustained her burden of showing that the death arose out of and occurred in the course of the employment, it seems clear that the board has not weighed the conflicting medical evidence but has imposed an impossible burden of proof on the petitioner.

▮ Larson classifies the risks in three categories, industrial, personal, and neutral, and suggests that the source of injury may be classified as neutral either when the nature of the harm is not related to the employment or to the employee personally or when the nature of the harm may be simply unknown. The rule is that when an employee at the place and in the period of his employment is injured by some neutral harm, the injury is compensable on the theory that his employment took him to the place of harm. (*Pacific Indem. Co.* v. *Industrial Acc. Com.*, 86 Cal.App.2d 726 [195 P.2d 919] [an explosion]; *Madin* v. *Industrial Acc. Com.*, 46 Cal. 2d 90 [292 P.2d 892] [runaway bulldozer]; *Truck Insurance Exchange* v. *Industrial Acc. Com.*, 147 Cal.App.2d 460 [305 P.2d 55] [stray bullet].) Of course, in these cases the nature of the harm was known but was neutral because it was not connected with either the employee's personal life or the employment.

The action of the board in denying the petition for reconsideration presumes that the referee made a valid finding based on the evidence as to the cause of death and correctly determined that there was no causal connection between the

deceased's employment and his death. ■ The referee did find that the death did not arise out of and occur in the course of the employment. However, in her opinion on her findings the referee said that "from all of this evidence it appears that the deceased employee, John Starks Clemmens, died from a cause or causes which have not been determined." If that is the case, petitioners, as we have pointed out above, were entitled to the benefit of a presumption or inference that the death arose out of the employment, since it is undisputed that his employment brought him to the place where his death occurred. ■ On the other hand, where there is conflicting expert medical evidence as to the cause of death, as there is in this case, it is the duty of the referee to resolve that conflict.

In all such cases, "the burden of proving that the employment is a proximate cause is on the employee and frequently the employee is unable to sustain the burden of proving industrial causation. But the difficulty of proof is no reason to deny an award if the evidence warrants it. Obviously the commission must depend on the reasoned opinions of attending physicians and experts in the field. The fact that experts may be divided in their opinions as to causation, or that different schools of thought exist in the medical profession, is no reason to deny liability if the commission finds on competent substantial evidence in accord with those doctors who honestly believe that the employment hastened or precipitated the injury." (*Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.*, 73 Cal.App.2d 555, 559-560 [166 P.2d 908].) The converse of this proposition is equally true. ■ In the case before us it is apparent from the record that, in reaching the conclusion, as stated in her opinion on the findings, that the deceased died from a cause or causes which have not been determined, the referee did not give any consideration whatever to the opinions of the experts.[3]

In our opinion the order that petitioners take nothing must be annulled and the matter remanded to the board with directions to resolve the conflicting evidence and make a finding as to the cause of the deceased's death, and to thereafter take such further proceedings as may be appropriate in the light of that finding. ■ In resolving that conflict in order to determine whether there is any causal connection between the

---

[3] On this point the relevant portions of the referee's opinion are quoted above in footnote 2.

employment and the death, the board is bound, as are the courts, "by the fundamental principle that to effectuate the purposes of the compensation statute, all reasonable doubts as to whether an injury is compensable are to be resolved in favor of the employee." (*California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 157, 161 [65 Cal.Rptr. 155, 436 P.2d 67].)

The order under review is annulled and the Workmen's Compensation Appeals Board is directed to take further proceedings in the matter in accordance with the views expressed in this opinion.

Wood, P. J., and Fourt, J., concurred.

The petition of respondent board for a hearing by the Supreme Court was denied May 9, 1968. Peters, J., Burke, J., and Sullivan, J., were of the opinion that the petition should be granted.