127 Cal.App.3d 514 (1982)
179 Cal. Rptr. 605
CALIFORNIA STATE POLYTECHNIC UNIVERSITY, POMONA, Petitioner,
v.
WORKERS' COMPENSATION APPEALS BOARD, EZRA HENDERSON et al., Respondents.
Docket No. 62605.
Court of Appeals of California, Second District, Division Two.
January 7, 1982.
*515 COUNSEL
Richard A. Krimen, Michael J. Brodie, Arthur Hershenson, Fernando Da Silva and Louis Harris for Petitioner.
Arthur J. Jaffee and John P. Angles, for Respondents.
OPINION
COMPTON, J.
We review a decision of the Workers' Compensation Appeals Board (Board) approving a finding by a workers' compensation *516 judge that the death of an employee of the California State Polytechnic University at Pomona arose out of her employment.
Decedent was employed as a stenographer at the university. She worked in an office on the campus which apparently contained administrative offices and classrooms. The office was off a corridor heavily trafficked by students, teachers and other employees.
On October 24, 1977, while school was open and in session, decedent was shot to death while sitting at a desk in her office. There were no witnesses to the actual shooting. The gun was left at the scene. Investigation disclosed the gun had been stolen in a burglary in Compton.
Dr. Armstrong, a professor of education at the university, entered decedent's office just prior to the shooting and observed a black male standing in front of decedent's desk. Dr. Armstrong apparently left before the shooting.
Dr. Hammond, another professor, had seen decedent talking to a black male on the campus about a week earlier. On the day of the shooting he observed a black male in a restroom in the building. This individual was not a student on the campus.
When the two aforementioned witnesses were shown a picture of decedent's ex-boyfriend, one Donald Phillips, Dr. Hammond identified Phillips as the individual he had seen talking to decedent on the earlier occasion. While he could not be positive, he felt that the individual he had seen on the day of the shooting looked like the same man.
Dr. Armstrong similarly indicated that Phillips resembled the individual he had seen in decedent's office on the day of the shooting, although he could not be positive.
Police investigation naturally focused on Phillips as a suspect. That investigation disclosed the following:
Phillips had apparently murdered decedent's husband in 1973. In the course of the trial for that murder, decedent had lied in order to exonerate Phillips. Phillips had been demanding money of the decedent to pay legal fees incurred in the 1973 trial.
*517 Phillips had made several threats on decedent's life  the last one being on October 12. Further, on October 8, Phillips' father had warned decedent that Phillips would kill her within a week because of money she allegedly owed him.
Most of these facts came from statements made by decedent on a tape recording which she prepared in anticipation of being killed by Phillips and delivered to a fellow worker.
It was evident from the testimony produced at the hearing before the workers' compensation judge that law enforcement authorities were convinced that Phillips had committed the murder. Evidentiary problems, however, militated against a successful criminal prosecution. Phillips was not formally charged or prosecuted.
The Board, in its opinion, declared that it was established that Phillips had a personal motive to kill the decedent and that decedent was in great fear that Phillips would harm her.
The key portion of the opinion which reveals the Board's analysis of the case is as follows at pages 7 and 8: "In his report, the workers' compensation judge noted that he treated this as a neutral force case, as defendant had not shown by substantial evidence that the injury was incurred by reason of either a personal motive, or other non-industrial reasons. The judge reasoned to the effect that while one may infer that the shooting was done by Phillips for personal motives, that inference is not sufficient to overcome the finding of compensability. Such inference only amounts, at best, to a `reasonable doubt' as to whether the injury arose out of the employment, and such doubts are to be resolved in favor of the employee. (See Madin v. Industrial Acc. Com. (1956) 46 Cal.2d 90, at p. 93.) We agree with the workers' compensation judge.
"It is ordinarily the injured employee's burden to prove that an injury arose out of and occurred in the course of employment. However, when death occurs in the course of employment under mysterious circumstances, and where the employee, because of his or her death, is not available to explain exactly what happened, the burden of proof should shift to the defendant to establish that death was not in fact caused by the employment. (See Clemmens v. Workmen's Comp. App. Bd. (1968) 261 Cal. App.2d 1.)" (Italics added.)
*518 It is clear that decedent's injury herein occurred in the course of employment as it happened while she was at work. The issue is whether her death arose out of that employment. (See Madin v. Industrial Acc. Com., supra, 46 Cal.2d, at p. 92 [292 P.2d 892].) If decedent was shot for reasons connected with her employment, her death would be compensable even if the assailant shot her for personal reasons. (Ross v. Workmen's Comp. Appeals Bd. (1971) 21 Cal. App.3d 949 [99 Cal. Rptr. 79].)
(1) However, if an assault at work is purely personal and unrelated to the employment, the injury is not compensable. (Transactron, Inc. v. Workers' Comp. Appeals Bd. (1977) 68 Cal. App.3d 233 [137 Cal. Rptr. 142].) "The role of employment in the shooting is inconsequential when it merely provides a place where the assailant can find the victim. [Citation.] Where the nature of the employee's duties places her in no particularly dangerous or isolated position, or where the risk of harm is not limited to the place of employment ... the injury does not arise out of the employment." (Ibid. at p. 239.)
(2) Claimants, who are decedent's children, presented no evidence that the shooting arose out of the employment relationship. The Board acknowledged this but reached its conclusion of compensability by shifting the burden to the employer to negate that requirement. In our opinion, this was improper and was based on a misreading of the holding in Clemmens v. Workmen's Comp. App. Bd., supra, 261 Cal. App.2d 1 [68 Cal. Rptr. 804].
In Clemmens, the decedent, an electrical engineer, was required by his employment to inspect electrical equipment in various plants belonging to the employer. He was found dead near an electrical instrument panel that he was in the course of inspecting. His test equipment was connected to the electrical panel. The autopsy revealed no clear evidence of electrocution, but it could be inferred at least that the death was probably employment connected. The court in Clemmens quoted with approval the following language from Professor Larson's text.
"`When an employee is found dead under circumstances indicating that death took place within the time and space limits of the employment, in the absence of any evidence of what caused the death, most courts will indulge a presumption or inference that the death arose out of the employment. The theoretical justification is similar to that for unexplained falls and other neutral harms: The occurrence of the death *519 within the course of employment at least indicates that the employment brought deceased within range of the harm, and the cause of harm, being unknown, is neutral and not personal. The practical justification lies in the realization that, when the death itself has removed the only possible witness who could prove causal connection, fairness to the dependents suggest[s] some softening of the rule requiring claimant to provide affirmative proof of each requisite element of compensability.'" (Italics added; 1 Larson, Workmen's Compensation Law, pp. 108-111 (quoted in Clemmens, supra, 261 Cal. App.2d at p. 5.)
The Clemmens court relied on four cases in which the death or injury was obviously related to the employment even though the exact cause could not be established. (Western Metal Supply Co. v. Pillsbury (1916) 172 Cal. 407 [156 P. 491]; Western Grain etc. Co. v. Pillsbury (1916) 173 Cal. 135 [159 P. 423]; Bissinger & Co. v. Industrial Acc. Com. (1930) 105 Cal. App. 441 [287 P. 540]; F.W. Woolworth Co. v. Ind. Acc. Com. (1941) 17 Cal.2d 634 [111 P.2d 313].)
We do not read Clemmens, nor the cases cited therein, as standing for the proposition that in all cases of death in which the cause of death is not susceptible of proof by direct evidence, or as the Board here characterized as under "mysterious circumstances" that the burden of proving the absence of employment relationship shifts to the employer. While the distinction may at times be a fine one, we read Professor Larson's approach of a "softening of the rule" as a quantum easing of the claimant's burden rather than a shifting of the burden of proof to the employer.
The necessary elements for compensation, as is the case with any fact, can be proved or disproved by indirect or circumstantial evidence and the burden of proof remains with the claimant. In Clemmens, as well as the cases cited therein, proof that the injury or death arose out of the employment was established by circumstantial evidence. The very circumstances of the injury or death suggested that it probably arose out of the employment.
In the case at bench the reverse is true. The location of the death, the manner in which it occurred and the nature of decedent's employment all suggest initially an absence of any connection with the employment. It is simply a fact of life that a stenographer on a relatively quiet and rural college campus is rarely exposed to being shot for reasons connected with that employment. Further, considering the circumstances *520 of this case, especially the location of the shooting, it appears that decedent was not the only witness who could have proved the causal connection, if it in fact existed.
Adding to that background, the employer here offered evidence which would lead any reasonable person to conclude that the slayer was Phillips and his motive personal. Thus this case does not fall within that category of cases described by Professor Larson in the earlier quoted passage. Here there was evidence of what caused the death and no evidence to indicate that the employment brought the deceased within the range of harm.
The workers' compensation judge and the Board erred in favoring claimants with a presumption that the death arose out of the employment. Even a "softening of the rule" or an easing of claimant's burden would not assist claimant here since there was not a scintilla of evidence direct or indirect from which it could be inferred that the death or injury probably arose out of the employment.
The fundamental rule remains unchanged. The burden of proof is on the party asserting the affirmative of an issue. (Evid. Code, § 500; Lab. Code, § 5705.) Further, the decision of the Board must be supported by substantial evidence. (Lab. Code, § 5952, subd. (d); LeVesque v. Workmen's Comp. App. Bd. (1970) 1 Cal.3d 627 [83 Cal. Rptr. 208, 463 P.2d 432].)
The workers' compensation judge and the Board in this case, after conceding that it could reasonably be inferred that Phillips murdered the deceased for personal reasons and then refusing to give any weight to that inference, in effect, concluded that only direct eyewitness testimony to the shooting would be adequate to sustain what the Board saw as the employer's "burden of proof." That is not the law.
Assuming arguendo that the Board properly relied on a presumption of compensability "to soften the rule" of requiring the claimants to prove every element of their case, that presumption only imposed on the employer the burden of producing evidence.
Evidence Code section 603 states: "A presumption affecting the burden of producing evidence is a presumption established to implement no public policy other than to facilitate the determination of the particular action in which the presumption is applied."
*521 The "presumption of compensability" is one designed to facilitate the determination of the particular action rather than the implementation of a public policy. Thus when the employer produced evidence which, as the Board concedes, provided a reasonable inference that the death was not related to the employment the presumption was dissipated leaving the Board's decision unsupported by any evidence.
The order is annulled.
Roth, P.J., and Beach, J., concurred.
The petition of respondent children for a hearing by the Supreme Court was denied March 3, 1982.