[Civ. No. 7363. First Appellate District, Division Two.—May 1, 1930.]

BISSINGER AND COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, EMMA CARPENTER et al., Respondents.

442

Redman & Alexander and R. P. Wisecarver for Petitioners.

Edward O. Allen for Respondents.

STURTEVANT, J.—Walter Carpenter was an employee of Bissinger and Company. He was a traveling salesman. On September 10, 1929, and for a short time prior thereto he had possession of and was entitled to use an automobile owned by his employer. His employer paid for the upkeep and repairs of the car, but permitted Mr. Carpenter to use the car for his private and pleasure uses as well as for business uses and when he was in San Francisco to keep the car in his own garage. On September 10, 1929, he had been in Santa Cruz. His wife was with him. As they were coming home over the Santa Cruz grade Mr. Carpenter

noticed that the motor-meter became quite hot and he stated that he would have to fix that before starting on the next trip. He also stated that he would also have to fix the gasoline gauge as it became stuck. On the next day he went to his office and later called for his wife at her club and took her home and put the automobile in the garage which adjoins their home. They went into their home, had their dinner and the wife thereafter reclined on a davenport and her husband sat down in an armchair and went to sleep. About 9:30 she arose and went to bed. Later the husband arose and walked into the bedroom and inquired if she was asleep. He then went into the kitchen and from there down to the basement. The wife testified that she looked at the clock and it was then about 12:20 A. M. About 7 o'clock the next morning a tenant of their building awakened Mrs. Carpenter. Immediately before doing so the tenant and his wife had smelled gas escaping from the garage and had opened it and there they found Mr. Carpenter seated at the wheel in the front seat of the automobile. After Mrs. Carpenter was notified she went downstairs and Mr. Carpenter was sent to the emergency hospital. He was dead at the time. When he was discovered in the garage he had his left hand on the steering-wheel and his right arm on the seat and his head was resting on his right arm; his coat and vest were found hanging in the basement of the house; the engine in the automobile was running and the lights were turned on. A flashlight was lying on the floor of the car. A duster or mackintosh folded up was lying on the seat. Some two days later a small screw-driver was found on a ledge in the garage. It had formerly been upstairs. On the right sleeve of Mr. Carpenter's shirt there was a splotch of dirt. There was evidence that Mr. Carpenter sometimes replaced light bulbs and changed the tires, but there is no evidence that he ever at any time made repairs at night. After his death Mrs. Carpenter presented to the Industrial Accident Commission her claim. The Commission made award in her favor and the employer and its insurance carrier have commenced this proceeding to review said award.

The petitioner claims that there is no evidence showing that Mr. Carpenter's death arose by reason of an accident "arising out of his employment when overcome by monoxide

gas while working on his employer's automobile.'' The respondents contend that said finding is supported by the inferences that may properly be drawn from the evidence introduced. Our statute, Code of Civil Procedure, section 1960, provides as follows: "An inference must be founded: 1. On a fact legally proved; and, 2. On such a deduction from that fact as is warranted by a consideration of the usual propensities and passions of men, the particular propensities and passions of the person whose act is in question, the course of business, or the course of nature."

█ It was a proved fact that a certain screw-driver theretofore was kept upstairs. That two days later the screw-driver was on a ledge in the garage. It is said, it may be inferred that the decedent took the screw-driver to the garage; that he did so on the night of the accident, and that he took it for the purpose of making adjustments on the car. No one of these inferences may properly be indulged. The only inference that may be indulged is that somebody at some time took the screw-driver from upstairs to the garage.

█ It was a proved fact that a spot of dirt was on the shirt of the decedent. It is said, it may be inferred, that there was dust and dirt on the car; that the decedent made adjustments to the car; that in doing so he rubbed up against the car, and that in doing so he got a splotch of dirt off of the car. No one of these inferences may be drawn. The only inference that may be drawn is that the decedent's sleeve had rubbed some dirty object.

There were also proved facts that the decedent had in his possession his employer's car; that the decedent had formed the opinion that adjustments were needed in the car; that it was no part of decedent's duty to make said adjustments; that he had not been in the habit of making such adjustments at night and in particular after midnight; that after midnight the decedent went to the garage; that the next morning he was in the car in the garage and was seated at the wheel; that at that time he was dead; that the engine in the car was then in motion and that the garage was filled with monoxide gas. In addition to that direct evidence there was a presumption, as distinguished from an inference, which must be considered. █ It is the settled law of

this state that it will not be presumed that a person has committed suicide. (*Ross* v. *San Francisco-Oakland T. Rys. Co.*, 47 Cal. App. 753, 760, 761 [191 Pac. 703]; *Wilkinson* v. *Standard Acc. Ins. Co.*, 180 Cal. 252, 256 [180 Pac. 607].) That being so, the question is narrowed down to whether death was caused by accident or by natural causes. To answer that question the Commission was entitled to consider these facts and draw these conclusions. The decedent went into his garage and started the engine in motion. That is a proper and legal inference. Thereafter large quantities of monoxide gas accumulated. When discovered the decedent was dead. As there was no evidence of a post-mortem examination or any other evidence to the contrary, it will be presumed that things happened according to the ordinary course of nature. (Code Civ. Proc., sec. 1963, subd. 28.)

Therefore, as his dead body was found enveloped in a deadly gas, it will be presumed that he was asphyxiated by that deadly gas. If the petitioners believed that death followed natural causes, they should have introduced evidence rebutting the foregoing evidence.

He was not in the act of taking a drive, because the doors of the garage were closed. He was not there to amuse himself because that act at that time of day was not "the usual propensity" of men nor was it shown to be "the particular propensity" of the decedent. Therefore, he must have been making adjustments to the car. When there are two different inferences which may be drawn, one of which will support and the other of which will overthrow the judgment, in support of the judgment we must presume the fact finding body adopted the former and not the latter.

At the time the decedent and his wife went home on the day before his death, according to the ordinary customs of business, his day's work was at an end. As stated in the beginning he was not employed to make adjustments to automobiles either during the daytime or at night-time. Whether his acts, at midnight and later, in the nature of making adjustments to automobiles, came within his employment might be debatable. So far as we are advised, that question was not presented to the defendant Commission.

It has not been presented by either side in this court. Therefore we express no opinion thereon.

The defendants did not exceed their jurisdiction. The award is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 29, 1930, and an application by petitioners to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 30, 1930.