[Civ. No. 9547. Second Appellate District, Division Two.—June 20, 1934.]

HARTFORD ACCIDENT & INDEMNITY COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, SADYE UNDERWOOD et al., Respondents.

George L. Greer for Petitioner.

Everett A. Corten and Drumm, Tucker, Martell & Drumm for Respondents.

CRAIG, J.—An award by respondent commission for injury sustained by an owner and operator of a truck and against certain contractors and their insurance carrier is presented for review by said carrier. It is undisputed that the employee received injury while hauling with his own conveyance material for highway construction at Mountain View, and that said injury caused his demise; that he and other truckmen had been employed elsewhere in hauling materials for road construction by a partnership known as Nollenberger and Knapp; that the latter were using their own trucks and those so employed in hauling cement, sand and rock, commonly termed "batching", under an agreement with a general contracting firm known as Basich Brothers at the rate of $2.25 per hour per truck; that upon removal to Mountain View the trucks were occupied in "batching" part of the time and when not so engaged were permitted to carry dirt for building "shoulders", etc., on said highway. An award for dependents of said deceased was granted, based upon findings that decedent, while employed as a truck driver by defendant Basich Brothers, sustained injury arising out. of and occurring in the course of said employment, and that defendants Nollenberger and Knapp were not the employers at the time of said injury. It is contended in this proceeding that Basich Brothers were not the employers at the time of the injury in question, that they did not have the power to hire or discharge truck owners and employees and that said decedent was at the time of injury an independent contractor. We think the objections resolve themselves into a test as to the sufficiency of the evidence upon which such findings and conclusions were founded.

The witness Knapp, one of the general contractors, testified that the latter employed decedent and others to work with their own drivers in hauling "batches"; that they had agreed to furnish all necessary trucks and that if more were needed they were "to go out and hire them"; that Basich Brothers paid the hired truckmen in this work, but that amounts so paid were taken out of the firm account of Nollenberger and Knapp; that he supervised all trucks while "batching"; that at the Mountain View job "if they weren't busy and I knew Basich wanted extra trucks he would tell me . . . and they would go to work for him if they wanted to"; that Underwood, the decedent, hauled dirt for $2.25 an hour, which was paid directly to drivers as their compensation; that Nollenberger and Knapp had no contract to haul dirt and gave no instructions at such times. The witness occasionally kept the time of men and turned it in "just for accommodation", but did not consider them his men—they were not on his pay-roll and his firm received nothing for their work when not hauling cement, sand and rock. He swore positively: "I was to receive $2.25 for my trucks; if they needed any extra trucks to haul dirt . . . "; hired truckmen "had the same privilege. If they were not busy then if Basich needed trucks they could go to work for him." He told them, "I knew Basich needed extra trucks on the dirt hauling" and "explained explicitly to Mr. Underwood that if he hauled dirt he hauled for Basich . . . and told them they were working for Basich when they worked on the dirt. Basich set the price. In fact, their superintendent came to me one day and said that 'he could only pay $2.00 an hour for that work' . . . and he went to Underwood and said they could only pay $2.00 an hour and asked him if he wanted to stay on, and he [Underwood] said 'what are you doing?' and I said, 'I am pulling my trucks off', and he said 'I will do the same thing, then', and finally they agreed to pay $2.25." The job superintendent of Basich Brothers testified that he hired these men for hauling dirt; their manager stated under oath that he agreed with that testimony. Said superintendent was in charge of the dirt hauling, and "Basich Brothers told them where to dump dirt . . . where to get dirt . . . when to stop work . . . when to quit work . . . He could have fired them any time . . . they paid all these truck

owners and drivers." Asked if Nollenberger and Knapp had "anything to do with these truck drivers such as Underwood on the dirt hauling", he replied, "Not to my knowledge". Other evidence tended to corroborate the foregoing testimony of witnesses of the contractors found by the commissioners to have been employers of the decedent when he was injured.

In the review of proceedings upon application of the party aggrieved for final determination as to the sufficiency of the evidence to sustain an award, the findings of respondent commission will be disturbed only when it becomes apparent that the triers of fact, with the witnesses before them, arrived at their decision in the absence of substantial evidence, or so in disregard of convincing evidence to the contrary as to exceed their jurisdiction. (*Bissinger & Co.* v. *Industrial Acc. Com.*, 105 Cal. App. 441 [287 Pac. 540]; *Carlson* v. *Industrial Acc. Com.*, 213 Cal. 287 [2 Pac. (2d) 540].) The record herein does not permit of such a conclusion. And further, *Chapman* v. *Edwards*, 133 Cal. App. 72 [24 Pac. (2d) 211], so completely answers the second question of the petitioner as to be controlling here. It was there held upon an abundance of authority: "Perhaps no single circumstance is more conclusive to show the relationship of an employee than the right of the employer to end the service whenever he sees fit to do so. (*Press Publishing Co.* v. *Industrial Acc. Com.*, 190 Cal. 114 [210 Pac. 820].) The real test by which to determine whether a person is acting as the servant of another is to ascertain whether, at the time when the injury was inflicted, he was subject to such person's orders and control and was liable to be discharged for disobedience or misconduct. . . . Other factors which may be considered are the hours of labor, terms of compensation, place where work is done and manner and nature of work to be performed." In each of these particulars the record discloses evidence which may have and doubtless did compel the rendition of said award, and it cannot be held as a matter of law an excess of jurisdiction to accept it as true even were there evidence directly at variance therewith.

The award is affirmed.

Stephens, P. J., and Archbald, J., *pro tem.*, concurred.