## In Re Howard.

[No. 10,714. Filed December 12, 1919.]

1. MASTER AND SERVANT.—*Workmen's Compensation.*—*Words and Phrases.*—*"Employment."*—The word "employment," as used in clause (c) of §76 of the Workmen's Compensation Act (Acts 1915 p. 392), means the general occupation in which the employe was engaged when he received his injury. p. 563.

2. MASTER AND SERVANT.—*Workmen's Compensation.*—*Concurrent Contracts of Employment.*—*Measure of Liability for Injury.*— Where one doing janitor service for different persons, under separate, concurrent contracts, known to each, was injured so that he died while so engaged for one of them, his dependents are entitled under §§37 and 38 of the Workmen's Compensation Act (Acts 1919 pp. 164, 165) to compensation from the employer for whom decedent was engaged when injured, based upon the total earnings regularly received from all such employers. p. 563.

Certified question from the Industrial Board of Indiana in proceedings under the Workmen's Compensation Act by the widow of John B. Howard, deceased.

REMY, J.—The Industrial Board of Indiana, pursuant to §61 of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 Burns' Supp. 1918), has certified to this court for determination a question of law based upon the following facts: For more than five

years prior to June 10, 1919, John B. Howard was a common laborer, and during all of that time was exclusively employed in janitor service. For more than a year immediately prior to June 10, 1919, he was employed under separate contracts of hire by three different employers, A, B and C. Employer A conducted an insurance agency, and during all of said year Howard was employed as office janitor. During all of the same year Howard was in the employ of B as janitor for his flat building, and likewise as janitor for a flat building that C owned and controlled. During all of said year A had paid to Howard a weekly wage of $1.25; B a weekly wage of $12.50; and C a weekly wage of $4.25, making the total weekly earnings or wages of Howard for said year the sum of $18. Each of said employers knew of the employment of Howard by the others, knew of the services performed, and the wages received. On June 10, 1919, while engaged in the line of his employment in washing windows for A, Howard lost his hold and fell to the sidewalk, thereby receiving injuries which resulted in his death on said date. A had actual knowledge of the injury to, and the death of, Howard at said time. Howard left surviving him as his sole dependent his widow, who was living with him as his wife at and prior to the time of his injury and death.

It is conceded that the widow is entitled to 300 weeks' compensation. Employer A contends that the weekly compensation should be based upon the weekly wage paid by himself, which, under §40 of the Workmen's Compensation Act, *supra,* would be $5.50. The widow contends that she is entitled to compensation based upon the total wages or earnings received from Howard's employers, which, under §§37 and 38 of

the Workmen's Compensation Act as amended (Acts 1919 p. 158), would be $9.90 per week. The question involves the construction of certain sections of the act. Said §37 provides: "When death results from the injury within three hundred weeks, there shall be paid a weekly compensation equal to fifty-five per cent. of the deceased's average weekly wages during such remaining part of three hundred weeks as compensation shall not have been paid to the deceased, on account of the injury in equal shares, to all dependents of the employee wholly dependent upon him for support at the time of the death."

Clause (c) of §76 of said act, among other things, provides: " 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of injury, divided by fifty-two."

Under these provisions of the act, the widow of Howard is entitled to a weekly compensation equal to fifty-five per cent. of the "average weekly wages" of her husband "in the employment in which he was working at the time of the injury" which resulted in his death. As applied to the facts of this case, what is the meaning of the expression "in the employment in which he was working at the time of the injury?" If it means only the employment of employer A whose windows he was washing when injured, then the widow will receive a weekly compensation of $5.50. If the expression is construed to mean the employment of Howard by all of his employers, then the widow will receive a weekly compensation of $9.90. The question presented is one of first impression in this state. We have for our guidance, however, the

conclusions of those who have specialized in workmen's compensation laws, and the decisions of courts of other jurisdictions where similar laws are in force. Honnold in his excellent treatise on Workmen's Compensation (Vol. 1, p. 585) says: "In the case of concurrent contracts of service—that is, contracts running concurrently in respect to successive and separate employment—the computation of weekly earnings as a basis of an award is to be made as if all the earnings were earned in the employment of the one who was employer at the time of the injury, provided the services are performed in the same occupation."

A case in all respects similar to the one at bar was before the California Supreme Court. *Western Metal Supply Co.* v. *Pillsbury* (1916), 172 Cal. 407, 156 Pac. 491, Ann. Cas. 1917E 390. The facts of that case as stated in the opinion were as follows: "James Mason was employed as a night watchman by applicant, Western Metal Supply Company, and at the same time by five other corporations. He made regular rounds of the premises of the six employers. For his services he received thirty dollars per month from the applicant. The others for whom he acted as watchman paid him different sums, his aggregate monthly earnings from the six employers being $116. The Western Metal Supply Company knew that he was acting as watchman for other employers, but did not know the number of such other employers nor the identity of all of them. Mason's employment was by separate agreement with each of his employers, and not by any joint agreement or joint employment. * * *, the dead body of said James Mason was found upon the premises of the Western Metal Supply Company, death having been caused by gunshot

wounds inflicted by unknown persons engaged at the time of the murder in committing burglary upon the said premises. * * * The commission awarded * * * compensation * * * based upon the aggregate amount which he received from his six employers." In discussing the question presented, the court said: "The statute contains no provision which can be said to point to a clear solution of this problem. Probably the framers of the act did not have in mind the specific case of a workman employed in a given capacity by different employers, to each of whom he rendered services for a portion of his time. It must be remembered, however, that the main purpose of the act is to indemnify the workman for the loss suffered by him. The indemnity takes two forms —the furnishing of medical attention, and payment of a proportion of the earnings lost in consequence of the injury. In case of death, the amount payable is a percentage 'of the average annual earnings of the deceased employe.' A fair compensation is to be paid to the employe, or to the dependents who have lost in him their source of support. It should be based upon the amount which the employe was in the habit of earning in the particular kind of employment, rather than the amount he had been receiving from a particular employer."

A like question was passed upon by the Supreme Court of Massachusetts in *Gillen's Case* (1913), 215 Mass. 96, 102 N. E. 346, L. R. A. 1916A 371. In that case, Gillen, who was a longshoreman, was injured in the course of his employment by a steamship company; but, as was customary with longshoremen, he worked for other employers during each day or group of days. The question presented was whether his

compensation was to be based upon all of his weekly earnings as longshoreman, or upon the wages or earnings paid by the employer for whom he was engaged at the particular time he received his injury. In the course of its opinion the Massachusetts Supreme Court says: "It is obvious from the broad scope of the act and its comprehensive dealing with the whole subject that it was intended to provide for the employe as compensation within the limits specified therein a definite proportion of the amount which he earned weekly. It cannot be presumed that the legislature intended to offer a scheme of accident insurance which would be illusory or barren to large numbers of workmen. 'Weekly wages' as used in the first sentence quoted above plainly means all the wages which the employe received in the course of a permanent employment, which are all the wages he receives. * * * Therefore, we reach the conclusion that average weekly wages as used in the clause of the act last quoted was not intended to apply to recurrent periods of brief service at regular intervals, in cases where the entire time of the workmen is devoted to like employment for other employers in the same general kind of business. * * * Although not stated in precise words, we think that the general import of the act is to base the remuneration to be paid upon the normal return received by workmen for the grade of work in which the particular workman may be classified. * * * The loss of his capacity to earn, as demonstrated by his conduct in such regular employment, is the basis upon which his compensation should be based."

The statutes of California and Massachusetts, which were under consideration in the cases above

referred to, are very similar to the statute of this state which we are called upon to construe.

If Howard had been in the joint service of the three employers, then, under §49 of the Workmen's Compensation Act, *supra,* all of the employers would have contributed to the payment of the compensation in proportion to their respective wage liability. He was not in the "joint service" of his employers, but in the employment of all, under concurrent contracts of service. There is no provision in the act for the joint liability of employers who hold independent, concurrent contracts with the same employe. If the legislature had intended to make concurrent employers all liable for compensation in a case like the one at bar, it would in all probability have made special provision as it did with reference to joint employers.

Therefore, if the widow of Howard is to be compensated on the basis of the total average weekly earnings of Howard, it must be by employer 1-2. A whom he was serving at the time of his injury and death. The amount she should receive must depend upon the construction of clause (c) of §76, *supra.* The term "average weekly wages," used in §40 of said act, is defined in said clause (c) of §76 to be "*earnings* of the injured employe *in the employment* in which he he was working at the time of the injury." Does this definition mean that the average weekly wages of Howard is the amount he was receiving from the one employer for whom he was washing windows at the time, or does it mean the amount he was receiving in his employment as janitor? What is meant by the words "in the employment"? Webster defines "employment" as "occupation, business, which engages head or hands."

Worcester says "employment" means "business, occupation, object of industry, engagement, avocation, calling or profession." If we apply these definitions to the word "employment" as used in clause (c)· of §76, *supra,* as we must, then, under the facts of this case, Howard's employment was that of janitor, and he was engaged in that employment for three employers, and was injured while so employed. It follows that the compensation to be paid to the widow should be based upon the total earnings received by Howard from his three employers.

Enloe, J., dissents.