JAMES A. FORREST, JR. *v.* THEO. H. DAVIES & CO.,
LIMITED.

NO. 2649.

ARGUED APRIL 14, 15, 1947.                    DECIDED MAY 21, 1947.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY PETERS, J.

This is a claim for compensation by an injured work-
man under the Workmen's Compensation Act.[1]

The Department of Labor and Industrial Relations,
which is charged with the administration of the Work-
men's Compensation Act, is under the direction and con-

[1] S. L. 1915, Act 221, as amended, incorporated in the revision of 1945
as c. 77.

trol of the Commission of Labor and Industrial Relations.[2]
The administrative officer of the commission is the Director
of Labor and Industrial Relations,[3] hereinafter referred to
as the "director." Included in the powers and duties of
the commission is the power, with the approval of the gov-
ernor, to make, modify and repeal reasonable rules and
regulations for carrying out the provisions of the work-
men's compensation law. Pursuant to its powers to make
rules and regulations, the commission, on August 16, 1943,
with the approval of the governor, promulgated rule VII,
section 3, quoted in the margin,[4] implementing the pro-

---

[2] R. L. H. 1945, §§ 4103, 4105.

[3] R. L. H. 1945, § 4104.

[4] "Section 3. Computation of Wages.

"A. The following general methods for computing wages shall be used:

"(1) If the employee is a daily wage earner, defined as 'any employee to whom no wages are paid for holidays on which there is no work', who works six days per week, find the average cash weekly wage as follows:

"Daily wage X 300 ÷ 52 = Average cash weekly wage.
"If the employee works less than six days per week, find his average cash weekly wage on the basis of six-day employment, divide by six, and multiply by the number of days worked. If an employee works seven days per week, find the average cash weekly wage by multiplying the actual cash wage by 7.

"(2) If the employee is a salaried employee, defined as 'any employee from whose wages no deduction is made for holidays on which there is no work', find the average cash weekly wage as follows: ·

Monthly wage X 12 ÷ 52 = Average cash weekly wage.
"Weekly wage = Average cash weekly wage.

"(3) If the employee has been employed by the same employer in the same grade of work for the twelve months preceding his injury, find the average weekly wage in either of the following ways:

"(a) By the appropriate method provided in paragraphs (1) and (2) above; or

visions of Revised Laws of Hawaii 1945, section 4419, which has to do with the methods of computation of average weekly wages of injured workmen.

The administration of the Workmen's Compensation Act, in respect to injuries to workmen occurring in the City and County of Honolulu, is committed by law to the director.[5]  His awards are subject to appeal to the Labor and Industrial Relations Appeal Board,[6] hereinafter referred to as the "appeal board," and awards of the latter board, where the hearing is *de novo*, are subject to review by the first circuit court.[7]

The appeal board, pursuant to the provisions of Revised Laws of Hawaii 1945, section 4442, certified the following questions of law to this court:

"When a workman, who is a member of the United States Army, is employed during his free time by an employer who is subject to the provisions of Chapter 77, Revised Laws of Hawaii 1945, by which of the following methods do Section 4419 of said Chapter 77 and Section 3 of Rule VII of the Commission of Labor and Industrial Relations, effective September 1, 1943, require that the

> "(b) By dividing the annual earnings of such employee by 52.
>
> "When method (b) is used, a copy of the payroll record must be filed by the employer upon forms provided by the Director for this purpose.

"B. Overtime pay, bonuses, and the market value of board. lodging, fuel and other advantages which can be determined in money which the employee receives from the employer as part of his remuneration shall be included in computing the average cash weekly wage.

"C. In all cases other than ordinary employment the Director will establish the injured employee's average weekly wage after an examination of the circumstances and conditions relating to the employment."

5 R. L. H. 1945, §§ 4432, 4444.

6 R. L. H. 1945, § 4442.

7 R. L. H. 1945, § 4443.

average weekly wages of such workman be computed:

"(a) with regard only to the actual wages received by such workman from his industrial employment, or

"(b) with regard to the actual wages received by such workman from his industrial employment and his actual earnings from the United States Army at the time of his injury, or

"(c) with regard to the average weekly earnings of a person in the same grade employed in the same work by the same employer on a full time basis, or

"(d) with regard to the average weekly earnings of a person in the same grade employed at the same work by the same employer in the same manner as the workman in this instance?"

Accompanying the reservation certificate of the appeal board is the following statement of facts certified to by the chairman of the board:

"JAMES ALEXANDER FORREST, JR., a sergeant in the United States Army (32166642) was employed as a Truck Helper by Theo. H. Davies & Co., Limited (The Ocean Accident and Guarantee Corporation, Limited, insurance carrier) on his 'pass' time or time off from Army duties. On July 25, 1945, he sustained a personal injury by an accident arising out of and in the course of his employment by said Theo. H. Davies & Co., Limited. By a Compensation Order, dated August 29, 1945 (file number U-3797), the Director of Labor and Industrial Relations awarded to JAMES ALEXANDER FORREST, JR., claimant, as provided in Section 4416 (2), Revised Laws of Hawaii 1945, a weekly compensation of sixty-six and two-thirds per centum of his average weekly wages beginning on July 25, 1945, said compensation to continue until the disability ends, and found the average weekly wages of claimant to be $36.33 and the compensation rate to be $24.22 per week. Prior to the accident, Sergeant Forrest

had been employed by Theo. H. Davies & Co., Limited on the dates for the total number of hours, at the hourly rate and for the total daily wages as follows:

| "Dates | Hours | | | Hourly Rate | Daily Wages |
|---|---|---|---|---|---|
| "June 23, 1945 | 6-¼ hours at | | | .87¢ | $5.44 |
| "July 11, 1945 | 8 | " | " | .87¢ | 7.94 |
| | ¾ | " | " | 1.31 | |
| "July 18, 1945 | 8 | " | " | .87¢ | 7.94 |
| | ¾ | " | " | 1.31 | |
| "July 25, 1945 | " | " | " | .87¢ | 1.74 |

"As of July 25, 1945, James Alexander Forrest, Jr., received U. S. Army monthly pay as a sergeant with three years service on foreign service with a base pay of $97.50. Sergeant Forrest continued to receive his United States Army pay after sustaining said personal injury, and will continue to do so until his discharge from the United States Army. The average annual earnings of Truck Helpers employed by Theo. H. Davies & Co., Limited, for a one year period beginning July 1, 1944 and ending June 20, 1945, including over-time, is $1,889.08. Members of the armed forces were employed by Theo. H. Davies & Co., Limited and other employers in Honolulu on their free time in a manner similar to the employment of Sergeant Forrest.

"The Director's determination was made in accordance with section 3-C of Rule VII of the Commission of Labor and Industrial Relations, effective September 1, 1943 which reads as follows:

"'C. In all cases other than ordinary employment the Director will establish the injured employee's average weekly wage after an examination of the circumstances and conditions relating to the employment.'
and with regard to the average weekly earnings of persons in the same grade employed in the same work by the same employer on a full time basis."

Questions (a) and (b) will be considered together. Whatever method may be employed to compute the average weekly wages of an injured workman it must, under the mandatory provisions of section 4419, quoted in the margin,[8] be one best calculated to give the average weekly earnings of the workman during the twelve months preceding his injury. The definition and connotations of the noun "earnings" as employed in the statute is more extensive and comprehensive than the noun "wages" and implies that average weekly wages may be the aggregate of weekly wages received from more than one employer, and as thus construed may include weekly wages received by the workman under concurrent contracts of employment. If a workman works a part of the week for A and a part of the week for B under separate contracts of employment and receives $5 a week from each, his weekly earnings, as that term is generally understood, are $10 a week. It is true that our Workmen's Compensation Act, differently from its prototype, the English Workmen's Compensation Act of 1906,[9] contains no express provision as to the method to

8 "Sec. 4419. Computation of wages. Average weekly wages shall be computed in such a manner as is best calculated to give the average weekly earnings of the workman during the twelve months preceding his injury; provided, that where, by reason of the shortness of the time during which the workman has been in the employment, or the casual nature of the employment, or the terms of the employment, it is impracticable to compute the rate of remuneration, regard may be had to the average weekly earnings, which, during the twelve months previous to the injury, were being earned by a person in the same grade employed at the same work by the employer of the injured workman, or if there is no person so employed, by a person in the same grade employed in the same class of employment and in the same district.

"If a workman at the time of the injury is regularly employed in a higher grade of work than formerly during the year and with larger regular wages, only the larger wages shall be taken into consideration in computing his average wages."

9 6 Edw. VII, c. 58.

be employed to compute average weekly wages where the injured workman had entered into concurrent contracts of service with two or more employers under which he worked at one time for one employer and at another time for another such employer but we attach no significance to the omission from the local Act of a provision to that effect. In our opinion, the term "earnings" is sufficiently broad and comprehensive to include earnings accruing under concurrent contracts of service and in computing the average weekly earnings of the injured workman to consider his average weekly earnings as if his earnings under all subsisting concurrent contracts of employment were earnings in the employment of the employer for whom he was working at the time of his injury. This conclusion is confirmed by the definition of "workman" contained in section 4401 by the exclusion therefrom of persons whose remuneration "from any one employer," excluding pay for overtime, exceeds $100 a week.

Similar provisions have been construed in other jurisdictions. Obviously, the rule announced in each State depends largely upon the statute of the particular State, but even where the language construed is the same or substantially the same as ours the cases are in hopeless conflict. Those cited in the margin[10] are illustrative and at the same time instructive upon the question involved.

The rule here enunciated that where the workman has entered into concurrent contracts of service with two or more employers under whom he worked at one time for

10 For the rule herein enunciated: Western Metal Supply Co. v. Pillsbury, 172 Cal. 407, 156 Pac. 491, 496; Gillen v. Ocean Accident & G. Corp., 215 Mass. 96, 102 N. E. 346; In Re Howard, 71 Ind. App. 557, 125 N. E. 215; Sargent v. A. B. Knowlson Co., 224 Mich. 686, 195 N. W. 810; Bamberger Electric R. Co. v. Industrial Com., 59 Utah 257, 203 Pac. 345; 1 Honnold, Workmen's Compensation, p. 585. Against: King's Case, 234 Mass. 137, 125 N. E. 153; Quebec's Case, 247 Mass. 80, 141 N. E. 582.

one such employer and at another time for another such employer his average weekly earnings should be computed as if his earnings under all such contracts were earnings in the employment of the employer for whom he was working at the time of the accident is subject, however, to the qualification that in the case of concurrent contracts of service the wages of an injured workman earned in the service of an employer not subject to the provisions of the Workmen's Compensation Act are excluded in computing average weekly wages. The Act is intended to compensate the injured workman, or his dependents in the case of his death, for the pecuniary loss suffered by him or them by the impairment or loss of earning power of a workman injured in industrial or public employment. Public employment is not involved and hence its influence upon the subject of discussion is not considered. The basic principle of the Act is that costs of injuries incident to industry should be treated as a part of the costs of industry. To charge industry with the cost of injury not incidental to but, on the contrary, disconnected with industrial employment, would be to impose a charge upon industry not legitimately included in the cost of production. To exclude the wages earned in nonindustrial employment in computing average weekly wages observes this basic principle. Moreover, such exclusion equalizes the economic burdens and benefits. In the case of concurrent contracts of service with employers A and B, the liability of each employer, in the event of injury to the common workman, is the same. If the injury occurs while the workman is in the employ of employer A the amount of compensation for which A is liable is no greater than the liability of B if the injury occurred to the workman while in the latter's employ. Similarly, the benefits accruing to the injured workman.

Assuming, but not deciding, that upon the induction

of a soldier into the United States Army a contract of employment arises between the soldier and the United States, the instant case presents one of concurrent contracts of service with two employers, one of whom, the United States, is not subject to the provisions of the local Workmen's Compensation Act. Hence, the compensation to which the injured workman in the instant case is entitled by law as a sergeant in the United States Army must be excluded in computing his average weekly wages.

It is impossible, however, to answer questions (a) and (b) categorically. The statement of facts accompanying the certificate of reservation does not purport to contain all the facts. We are not advised whether "the actual wages received by such workman from his industrial employment," referred to in question (a), are confined to the limited period of employment out of and in the course of which the injury occurred. We have no history of his industrial employment, if any there be, preceding June 23, 1945. It is conceivable that he was previously engaged in industrial employment from which might be computed his average weekly wages in such a manner as is best calculated to give his average weekly earnings during the twelve months preceding his injury. If so, and the application of the primary directive of section 4419 is practicable and the term "industrial employment" used in question (a) refers to industrial employment sufficient to compute average weekly wages in the manner as is best calculated to give the average weekly earnings of the workman during the twelve months preceding his injury, question (a) would be answered in the affirmative and question (b) in the negative. Further discussion upon this subject would encroach upon a consideration of questions (c) and (d) and the application of the proviso of section 4419, and hence we shall proceed to a disposition of the latter questions.

Under the provisions of section 4416 (2) the injured workman is entitled to weekly compensation equal to 66-2/3 per cent of his average weekly wages but not more than $25 nor less than $8 a week, subject to exceptions with which we are not concerned. The adjective "weekly" modifying the noun "wages" is apparently used in sections 4416 (2) and 4419 in its generally accepted industrial sense of a work week of seven days, excluding the days upon which work is prohibited by law, such as Sundays, and excluding holidays upon which it is not customary to work. Hence it is that the first and primary duty of the administrative officer, board or court concerned with the determination of the amount of compensation to which an injured workman is entitled is to ascertain his average weekly wages. The adjective "average" when applied to the noun "wages" necessarily connotes the existence of a known quantity and a divisor by which a mean may be computed. This known quantity and divisor combined shall be referred to hereinafter, for want of a better term, as the "employment history" of the workman.

No statutory formulae are prescribed for the computation of average weekly wages. The only statutory provisions on the subject of computation of average weekly wages are those found in section 4419, supplemented by the definition of "wages" contained in section 4401. But the provisions of section 4419 negative the legislative imposition of any preconceived formulae for computing average weekly wages. The use of the word "manner" and the permissive phrase "regard *may* be had" indicate that whatever methods or formulae are to be applied is committed to the sound discretion of the administrative officer, board or court having the matter of computation in hand, the only injunction upon the method or formula to be applied being that the average weekly wages be computed in a manner as is best calculated to give the average weekly

earnings of the workman during the twelve months preceding his injury.

In our opinion, the provisions of section 4419 are merely guides to computing average weekly wages accordingly as the injured workman has an employment history sufficient from a practical standpoint (arithmetical perfection not being required) to compute his average weekly wages when the enacting clause of the section applies or where, by reason of shortness of time or the casual nature of the employment or by reason of the terms of the employment, it is impracticable to compute the rate of remuneration when the proviso of the section applies.

It is not necessary that the employment history of the injured workman cover an antecedent period of twelve months. It is only necessary that his employment history be of sufficient duration to admit of the computation of his average weekly wages on an annual basis. By computing upon an annual basis due allowance is made for the difference in wages accruing during the course of twelve months as a result of seasonal differences in both the opportunity for and the ability to accept work.

Obviously, to the employees described in rule VII, 3, A, (1), (2), (3) of the commission, the formulae incorporated in the rules might apply in proper cases but they are not exclusive. Where an employment history exists, be it for a period of twelve months preceding the injury or for a shorter period, if it is sufficient from a practical standpoint to compute the average weekly earnings of the subject of the history during the twelve months preceding his injury, the employment history constitutes the basis of computation and the formula to be employed must be consistent with the object to be attained. Rule VII (3) (c) is meaningless and of no assistance in solving the problem presented.

Claimant contends that where from shortness of time

or casual nature of his employment it is impracticable to compute the rate of remuneration of the injured workman, his "earning capacity" is the criterion of computation and cites in support of his contention cases[11] construing the Federal Longshoremen's and Harbor Workers' Compensation Act.[12] The Workmen's Compensation Act of the State of New York[13] contains similar language and has been similarly construed.[14] Both Acts provide that where prescribed formulae of computing average weekly wages are inapplicable, compensation be computed upon prescribed data "which shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the injury." The definition and connotations of the term "earning capacity" necessarily depends upon the context of the statute in which the term is employed and when measured by the actual earnings of a fellow workman of the same grade and the same class of employment accomplishes the same

11 Andrew F. Mahony Co. v. Marshall, 46 F. (2d) 539; Baltimore & O. R. Co. v. Clark, 59 F. (2d) 595; Burley Welding Works v. Lawson, 141 F. (2d) 964; Continental Casualty Co. v. Lawson, 64 F. (2d) 802; Fireman's Fund Ins. Co. v. Peterson, 120 F. (2d) 547; Fireman's Fund Ins. Co. v. Van Steene, 120 F. (2d) 548; Flores v. Bay Ridge Operating Co., 131 F. (2d) 310; Gunther v. U. S. Employees' Compensation Commission, 41 F. (2d) 151; Harbor Marine Contracting Co. v. Lowe, 152 F. (2d) 845; Luchenbach S. S. Co. v. Norton, 96 F. (2d) 764; Marshall v. Andrew F. Mahony Co., 56 F. (2d) 74; Pillsbury v. Pacific Steamship Company, 56 F. (2d) 79; Twin Harbor Stevedoring & Tug Co. v. Marshall, 103 F. (2d) 513.

12 44 Stats. pt. 2, c. 509, § 10 (c).

13 N. Y. Laws 1913, c. 816, § 14, subd. 3 as amended.

14 Matter of Littler v. Fuller Co., 223 N. Y. 369, In Re Prentice, 168 N. Y. Supp. 55; Rooney v. Great Lakes Transit Corporation, 180 N. Y. Supp. 652; M'Donald v. Burden Iron Co., 201 N. Y. Supp. 720; Roskie v. Amsterdam Yarn Mills, Inc., 181 N. Y. Supp. 891; Gruber v. Kramer Amusement Corporation, 202 N. Y. Supp. 413; Budowski v. Atlas Steel Casting Co., 263 N. Y. Supp. 255; Shaw v. American Body Co., 189 N. Y. App. 365; Remo v. Skenandoa Cotton Co., 189 N. Y. App. 367.

results as the provisions of our own Act. The influence of the statutory context upon the meaning to be attributed to the term "earning capacity" is instanced by the courts of Utah[15] and Arizona.[16] After all, we are concerned with the construction of provisions of our own Act. Its terms control. Section 4419, differently from the New York Workmen's Compensation Act, the Federal Longshoremen's and Harbor Workers' Compensation Act, and the Utah or Arizona Compensation Acts, does not employ the term "earning capacity" nor is earning capacity referred to in any way, even inferentially, as a criterion of computation. While directive formulae are absent from the provisions of section 4419, its provisions are sufficiently clear and unambiguous to admit of application of its provisions to each case as it arises. Under the provisions of section 4419, computation is based upon actual earnings of the injured workman, and where that is impracticable to compute then upon the actual earnings of a workman of the same grade, etc., and not upon the earning capacity of either.

The employer and the insurance carrier on the other hand contend that the average of the actual weekly earnings of the injured workman is the measure of his compensation. In other words, his daily wages become his weekly wages and the average is the basis upon which his compensation should be computed. This contention assumes that it was not impracticable to ascertain the average weekly earnings of the injured workman during the twelve months preceding his injury. But the facts reported, in our opinion, are insufficient to admit of this assumption and were they the only facts we would be constrained to hold, as a matter of law, that by reason of

---

15 State Road Com. v. Ind. Com., 56 Utah 252, 190 Pac. 544, 548.

16 Brisendine v. Skousen Bros. et al., 48 Ariz. 416, 62 P. (2d) 326, 329.

shortness of time it is impracticable to compute the rate of remuneration of the injured workman. However, upon the facts before him the director found adversely to this assumption and it is not within the province of this court to review his conclusion.

It is true that the reported facts are fairly open to the inference that the trucking activities of the employer are a continuous operation offering continuous employment for at least forty hours in each work week but it does not appear, nor is it fairly inferable therefrom, that the contract of employment of the injured workman was limited to one day a week or to any number of hours less than forty hours a week. In the absence of evidence of limitation upon the duration of his employment, it is immaterial that he worked but one day in June and one day in each of three successive weeks in July. If, by reason of the enumerated conditions, the proviso of section 4419 applies, the injured workman is entitled to compensation based on the average weekly earnings of a comparable employee described in the proviso upon a full-time basis unless under the terms of his contract of service, either express or implied, the duration of his employment was limited and, if so, then to compensation based on the average weekly earnings of a comparable employee described in the proviso the duration of the employment of whom was similarly limited.[17]

The director apparently concluded that by reason of shortness of time during which the workman had been in the employment it was impracticable to compute his rate of remuneration and to compute his average weekly wages applied the proviso of section 4419. If the injured workman had no employment history from which it was practicable to compute his average weekly wages, in other

---

[17] Ethier's Case, 286 Mass. 139, 189 N. E. 807; Rice's Case, 229 Mass. 325, 118 N. E. 674.

words, if by reason of shortness of time during which the workman had been in the employment it was impracticable to compute his average weekly wages and under the terms of his contract of service there was no limitation upon the duration of his employment, the director was correct in so doing. The word "employment" in the participial phrase "during which the workman has been in the employment" has reference to the employment out of and in the course of which the injury occurred and the term "shortness of time" connotes a lack of employment history, rendering the computation of average weekly wages impracticable.

The director, in applying the provisions of the proviso of section 4419, apparently computed the average weekly wages of the injured workman on the basis of average weekly wages of all employees of the same grade employed in the same work by the same employer. What facts impelled him to resort to this method of computation we are not advised. It is conceivable that the irregularity of workmen of the same grade employed in the same work by the same employer as the injured workman during the twelve months preceding the injury was the rule and not the exception. If so, the injured workman must suffer by the comparison. The method employed is fair and is consistent with the provisions of the proviso.

From what has been said in answer to the questions propounded, we think there is sufficient to guide the appeal board in applying the provisions of section 4419, but at the same time it must be apparent that we must decline to answer questions (c) and (d). These questions present mixed questions of law and fact. The terms of the statute "shortness of time," "casual," "impracticable," involve questions of fact. The reservations under the provisions of section 4442, *supra*, are confined to questions of law. It is not within the province of this court upon a certificate

of reservation of questions of law under section 4442 to determine questions of fact. Before we can answer these two questions all questions of fact involved therein must be definitely and ultimately determined by the trier of facts.

Cause remanded.

*R. B. Griffith* (*Smith, Wild, Beebe & Cades* with him on the briefs) for employer-appellant.

*Lt. Col. B. P. Cooper*, Assistant Staff Judge Advocate (*Col. E. II. Snodgrass*, Staff Judge Advocate, with him on the brief) for employee-appellee.