MARJORIE MAVER, PETITIONER-RESPONDENT, v. DWELL-
ING MANAGERS CO., AND FIDELITY CASUALTY CO.
OF NEW YORK, RESPONDENT-APPELLANT.

Essex County Court
Law Division

Decided February 8, 1960.

Mr. *Seymour B. Jacobs* argued the cause for petitioner-respondent (*Mr. Jacob L. Balk*, attorney).

*Mr. Isidor Kalisch* argued the cause for respondent-appellant.

LYONS, J. C. C. The matter here in controversy is the proper method of computing the wages of the deceased employee under the circumstances found in this case.

Decedent died as the result of a heart attack suffered while he was repairing a sink in the apartment house where he and his wife were jointly employed as janitors. Deceased was regularly employed by another employer as a boilermaker-welder. In determining the rate of compensation to be awarded the petitioner-widow the Deputy Director combined the wages from the boilermaker's job and one-half of the income received by decedent and petitioner for their janitorial services.

The respondent challenges the propriety of massing the earnings from two separate and distinct employments in establishing the rate of wages. The petitioner, on the other hand, makes the broad claim that such a practice has long been the law where the concurrent employments are similar in nature. It appears, however, that the only case in this

State dealing with a similar problem is *Knight v. Cohen,* 56 *N. J. Super.* 516 (*App. Div.* 1959). There the court determined that it was improper to combine the wages received by an employee from his employment as a truck driver and from employment where he performed household and gardening chores, for the reason that the employments were "unrelated in type of work." The court did not determine, however, whether the rule providing for the combining of wages from separate, similar employments would find acceptance in this jurisdiction under the terms of our statute.

The petitioner's argument in support of the award really rests upon favorable declarations found in other jurisdictions to the effect that where an injured employee is engaged in collateral employments which are similar in nature, the wage base shall be computed by aggregating the wages paid in the similar employments. Thus, aggregation of wages was held proper where: deceased had been employed by four separate employers as a watchman, *Moochler v. A. H. Herrick & Son,* 274 *App. Div.* 841, 286 *N. Y. S.* 397 (*App. Div.* 1936), affirmed 272 *N. Y.* 545, 4 *N. E. 2d* 729 (*Ct. App.* 1936); a school dietician was also employed by a church to look after the preparation of dinners served by the various church societies about 10 or 12 times a year, *McDowell v. Flatbush Congregational Church,* 252 *App. Div.* 799, 298 *N. Y. S.* 892 (*App. Div.* 1937), affirmed 277 *N. Y.* 536, 13 *N. E. 2d* 462 (*Ct. App.* 1938); deceased was employed as a night watchman by six employers, *Western Metal Supply Co. v. Pillsbury,* 172 *Cal.* 407, 156 *P.* 491 (*Sup. Ct.* 1916); decedent was employed by three employers as janitor, *In re Howard,* 71 *Ind. App.* 557, 125 *N. E.* 215 (*App. Ct.* 1919); decedent had been working in three jobs as a retail salesman, two in liquor stores, one in a clothing store, *St. Paul-Mercury Indemnity Co. v. Idov,* 88 *Ga. App.* 697, 77 *S. E. 2d* 327 (*Ct. App.* 1953). Conversely, it is generally held that combining of wages cannot take place where the jobs performed are dissimilar in nature, as where

the occupations were those of janitor and barber, *Birch v. Budd,* 256 *App. Div.* 53, 8 *N. Y. S. 2d* 781 (*App. Div.* 1939). In some few jurisdictions dissimilarity has not barred the grossing of wages from collateral employments. In *Juan's Case,* 125 *Me.* 361, 134 *A.* 161 (*Sup. Jud. Ct.* 1926), there was approval of combining wages from the employments of caretaker, janitor, fireman and mason's tender. In *McCummings v. Anderson Theatre Co.,* 225 *S. C.* 187, 81 *S. E. 2d* 348 (*Sup. Ct.* 1954), a like result was reached, but there the facts showed that the petitioner was injured on a job where he worked but one day a week as a projectionist, earning $6 therefor, while at his regular job as bricklayer he averaged in the neighborhood of $60 per week. But the court there relied on a special provision of the statute to the effect that where the usual method of computing average wages "would be unfair," "such other method * * * may be resorted to as will most readily approximate the amount which the injured employee would be earning were it not for the injury."

█ The petitioner argues that the facts developed in the trial of this case bring her within the "similar occupation" rule. The record reveals that in their joint employment as janitors, the petitioner and decedent performed a great variety of duties: collecting rents and keeping the books relating thereto, cleaning and washing halls, cleaning the incinerator, taking out garbage twice a week, shoveling snow, installing and removing screens, repairing roof leaks, replacing washers and doing some plumbing jobs, doing work on the boiler when it broke down, and repairing electrical switches. In connection with the boiler work the petitioner related that it broke down "frequently," "off and on" during the winter, and that decedent would sometimes have to get up at 3 A. M., shut off the fire, and work inside the boiler for "2 or 3 hours." The deceased performed all of the heavy work incident to the janitorial job and this would consume an average of two hours a day, save when the boiler needed attention. A partner in the respondent

company testified that the boiler had caused a "lot of inconvenience and extra work for the superintendent," and that it had also necessitated the calling-in of service men and boiler welders to put tubes in the boiler. He agreed that the decedent must have stayed up several nights "checking that boiler" and "watching it."

It does not follow that the mere fact that incidental to the decedent's miscellaneous duties were some small plumbing jobs, some extra work with a troublesome boiler, small electrical repairs and some roof repairs renders a job as janitor similar to the jobs of boilermaker-welder, plumber, electrician, and roofer. The cited tasks were but small parts of the general, comprehensive job that a janitor customarily performs. The test of similarity laid down in the cases dealing with the subject is in terms of the over-all nature of the jobs that are being compared. By that test the extremely general job of janitor is not similar to every trade or occupation that comprises some of the things that he is employed to do as a janitor. So, too, if the decedent had died as the result of injuries while working as boilermaker-welder, it would seem entirely illogical to include in his earnings what he received from the janitor job. An apt citation is the case of *Rowland v. 1201 Park Ave. Corp.*, 3 A. D. 2d 878, 161 *N. Y. S.* 2d 650 (*App. Div.* 1957), where the petitioner was injured in a part-time employment of janitor and had three other part-time janitorial jobs. The court approved a finding that the job of "maintenance man" at which he worked 40 hours per week for a fifth employer was dissimilar, though the work therein included painting, replacement of window cords, bulb replacement, cleaning of offices and a "little of everything."

I am of opinion that on the facts here found there is no warrant for combining the wages received in the jobs of boilermaker-welder and janitor.

There is a more pervasive reason for holding that the wages from the two employments should not be grossed. That reason lies in the statute itself. The section (*N. J. S. A.*

34:15–37) dealing with computation of wages, so far as is here germane, reads as follows:

" 'Wages,' when used in this chapter, shall be construed to mean the money rate at which the service rendered is recompensed *under the contract of hiring in force at the time of the accident.* \* \* \* Where prior to the accident, the rate of wages is fixed by the output of the employee, the daily wage shall be calculated by dividing the number of days the workman was actually employed into the total amount the employee earned during the preceding six months, or so much thereof as shall refer to *employment by the same employer."* (Italics supplied.)

It is manifest that our statutory declarations on the subject of "wages" are hemmed in by restrictive terms. Their clear import is that the wage base must be constructed on the total recompense which is provided in the "contract of hiring in force at the time of the accident." The individuality of the employment which is the source of "wages" is again stressed in the provision dealing with piece-work, that is, "where \* \* \* the rate of wages is fixed by the output of the employee." The calculation then is to be based upon the earnings of the previous six months, or so much of such period as shall refer to *employment by the same employer.* Such terms do not comport with the more general language used in the workmen's compensation statutes found in many other jurisdictions. Thus, in statutes which provide that average weekly earnings in the "employment in which he was working at the time of the injury," the word "employment" in such a context has been interpreted to mean the *kind* of employment rather than an individual employment by some particular employer.

The judicial problem, of course, is to truly interpret the statute. The salutary principle that the Workmen's Compensation Act shall be liberally construed confers no *fiat* to supply the deficiencies that may seem to exist in the handiwork of the Legislature. The doctrine that wages earned in separate, concurrent, similar employments should be combined is by no means generally accepted. In some

states it has been accepted, in others rejected. In any event, it is fallacious to apply to the interpretation of our statute the many shades of judicial opinion that have been expressed in the interpretation of statutes that are essentially different from ours. As was observed by the Appellate Division in *Knight v. Cohen,* 56 *N. J. Super.* 516, 524 (1959), the determination of whether compensation should take into account all of the earnings in separate employments is a matter of legislative policy. In its present form our statute is not expressive of such a policy.

The award will be reduced to the statutory minimum of $10 per week. This determination necessarily entails a reduction of the counsel fee allowed in the Workmen's Compensation Division. Counsel may present their views thereon at some convenient time.

A judgment, consented to as to form, may be submitted.